IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| **MITCHELL LAVERN LUDY,** : | |
| : | |
| **Plaintiff,** : | |
| : | |
| v. : | No. 5:14-cv-073 (MTT) (CHW) |
| : | |
| **CYNTHIA NELSON,** *et al.***,** : | |
| : | |
| **Defendants.** : | |
| : | |

### REPORT AND RECOMMENDATION

Plaintiff, a prisoner, commenced this action under 42 U.S.C. § 1983 ("Section 1983") and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq.*, by claiming that the Defendants, Georgia Department of Corrections and Dooly State Prison officers, (1) prevented Plaintiff, a Hebrew Israelite, from observing Passover in 2013, (2) hindered Plaintiff's ability to observe Passover in 2014 by withholding a bottle of anointing oil, and (3) prevented Plaintiff from observing the Hebrew Israelite Sabbath through a formal worship service. In terms of relief, Plaintiff requests monetary damages, a declaration that his rights were violated, and injunctions allowing him to observe Passover and to participate in a Shabbat service.

Now before the Court are Plaintiff's Fifth and Sixth Motions to Amend, as well as the Defendants' Joint Motion to Dismiss. As discussed below, and as summarized in the conclusion, it is **RECOMMENDED** that Plaintiff's Fifth Motion to Amend (Doc. 73) be **GRANTED**, that Plaintiff's Sixth Motion to Amend (Doc. 78) be **GRANTED IN PART AND DENIED IN PART** such that Chaplain Michael Sapp be added as a Defendant, and that the Defendants' Joint Motion to Dismiss (Doc. 67) be **GRANTED IN PART AND DENIED IN PART**.

1

**ABUSE OF JUDICIAL PROCESS**

At the core of this action are Plaintiff's claims that the Defendants prevented him from observing Passover in 2013. These claims are not new: Plaintiff previously raised them in Case No. 5:13-cv-353 (MTT), which this Court dismissed for abuse of judicial process. (Doc. 26). In that case, Plaintiff failed to divulge any of his prior lawsuits on both his standard-form complaint and in numerous subsequent amendments. In this case, by contrast, Plaintiff did divulge his prior lawsuits, but he failed to properly divulge them. Specifically, Plaintiff failed to list Case No. 5:13-cv-353 in response to questions seeking information about "lawsuits INVOLVING THE SAME FACTS." (Doc. 1, p. 2; Doc. 7, p. 2). Instead, Plaintiff listed Case No. 5:13-cv-353 in response to a question seeking information about "<u>ANY</u> LAWSUIT FILED IN <u>ANY</u> FEDERAL COURT in which you were permitted to proceed *in forma pauperis*," and which was "dismissed on the ground that it was frivolous, malicious, or failed to state a claim." (Doc. 1, p. 3; Doc. 7, p. 3). Both questions fall under the "PREVIOUS LAWSUITS" section of this Court's standard Section 1983 complaint form. (Doc. 1, p. 2; Doc. 7, p. 2).

In light of Plaintiff's error, the Defendants have moved the Court once again to dismiss Plaintiff's claims as a sanction for abuse of judicial process. (Doc. 67-1, pp. 3–6). Plaintiff, on the other hand, asks in his Fifth Motion to Amend (Doc. 73) for leave to correct his complaint.

Because Plaintiff provided sufficient information for this Court to screen his complaint, and because there is no indication that Plaintiff sought to mislead either the Court or the Defendants by wholly failing to disclose the existence of prior cases, it is **RECOMMENDED** that Plaintiff's pending Fifth Motion to Amend be **GRANTED**, and that Plaintiff be allowed to correct the "previous lawsuits" section of his standard-form complaint. It is also **RECOMMENDED** that the Defendants' Motion to Dismiss, insofar as it requests dismissal as a sanction for Plaintiff's abuse of judicial process, be **DENIED**.

**FACTUAL BACKGROUND**[1]

(1) Passover 2013

Plaintiff is an adherent of the Hebrew Israelite or Jewish Hebrew Israelite religion, which differs from mainstream Judaism.[2] In January 2013, while incarcerated at Dooly State Prison, Plaintiff asked for permission to celebrate "Passover."[3] Plaintiff has provided little information regarding either Hebrew Israelite beliefs in general or his own specific, personal beliefs, so it is not clear whether, and if so to what extent, the Hebrew Israelite observance of Passover reflects the mainstream Jewish observance of Passover. It is clear, though, that Plaintiff requested kosher foods, (Doc. 1, pp. 6–7), and that he was instructed to order from The Aleph Institute, a Jewish entity that would "not donate [or sell] to [Plaintiff] because of differences in belief." (Doc. 21, p. 15). Plaintiff claims that he alerted the Defendants to The Aleph Institute's refusal to provide kosher foods, but that the Defendants nevertheless failed to investigate or to provide an alternative vendor. (Doc. 21, pp. 2–3, 9–19). Plaintiff also claims that kosher foods ordered by Plaintiff's family on Plaintiff's behalf were confiscated upon arrival at Dooly State Prison. (Doc. 80, p. 21; Doc. 80-7, p. 1; Doc. 80-8, pp. 1–3; Doc. 80-9, pp. 1–2). As a result of these two types of "deprivation[s] of Passover meals," Plaintiff argues that he "had to miss meals for eight (8) days during Passover and as a [r]esult experienced symptoms of extreme hunger[,] pain, [and a] tremendous amount of weight loss." (Doc. 80, p. 10).

---

[1] At this stage in the proceedings, the "facts" are based on the fact-based allegations contained in Plaintiff's pleadings and other filings. *See, e.g.*, *Newsome v. Chatham Cnty. Det. Ctr.*, 256 F. App'x 342, 344–45 (11th Cir. 2007) (holding that, because pro-se pleadings are to be liberally construed, the court "should have considered . . . additional allegations [raised in an] objection as a motion to amend . . . and granted it"); *see also Waters v. Philbin*, Case No. 7:10-cv-105 (HL), 2011 WL 4043788 at *1 (M.D. Ga. Sept. 12, 2011) (discussing the "pro se leniency principle"). Moreover, for purposes of the Defendants' Joint Motion to Dismiss at least, Plaintiff's fact-based allegations must be accepted as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] *See Lawson v. Dugger*, 840 F.2d 781, 782–84 (11th Cir. 1987) (providing background information on the Hebrew Israelite religion).

[3] Plaintiff also observed or attempted to observe Passover in 2012 while at Wheeler Correctional Facility. (Doc. 80-7, p. 1).

(2) Passover 2014

In contrast to his Passover 2013 claim, Plaintiff does not complain that he was denied either kosher foods or the ability to order kosher foods in anticipation of Passover 2014. *See* (Doc. 34, p. 2) ("In April 14, 2014 I was allowed to observe Passover and use my vendor Gleiberman[] because it was found out by Defendant Chaney[] that Aleph Institute would not [] service me"). Instead, Plaintiff alleges that Defendant Chaney, (Doc. 25, p. 4), or perhaps Chaplain Michael Sapp—whom Plaintiff moves in his Sixth Motion to Amend to add as a Defendant, (Doc. 78, pp. 4–6)—confiscated and withheld a bottle of anointing oil, which Plaintiff argues is an "important tenet of the Hebrew Israelite Religion as it [r]elates to Mattithyah (Matthews) 26:1–21."[4] (Doc. 25, p. 2).

Given Plaintiff's allegations against Chaplain Sapp, it is **RECOMMENDED** that Plaintiff's Sixth Motion to Amend be **GRANTED IN PART**, and that service be made on Chaplain Sapp.

It is also **RECOMMENDED**, however, that insofar as Plaintiff sought to add "Officer Robinson" as a defendant, Plaintiff's Sixth Motion to Amend be **DENIED IN PART**. Plaintiff alleges that Officer Robinson told Plaintiff "that he would set the Plaintiff up by having correctional [officer] Whitfield put blood on the Plaintiff['s] shoe and accuse the Plaintiff of [assault]." (Doc. 78, p. 6). Liberally construed, Plaintiff's allegations appear to present a First Amendment retaliation claim. Such a claim does not arise out of the "same nucleus of operative facts" underlying Plaintiff's Passover-observance and worship-service claims, and are therefore more appropriate for a separate Section 1983 action.

---

[4] *Cf. Smith v. Gov'r for Ala.*, 562 F. App'x 806, 812–14 (11th Cir. 2014) (affirming summary judgment against a RLUIPA Plaintiff who offered no evidence establishing that four items—a sacred rune container, a leather folder for study materials, a quartz crystal, and an outdoor fire pit—were "fundamental" to his practice of Odinism).

4

(3) <u>Hebrew Israelite Worship Service</u>

Plaintiff's last distinct argument relates to his inability to participate in a Hebrew Israelite worship service while at Dooly State Prison. Plaintiff initially raised this argument in his First Motion to Amend, (Doc. 7), and based on the factual distinction between Plaintiff's original Complaint and his First Motion to Amend—the former raising only Passover-observance claims, the latter raising only worship-service claims—the Court initially treated Plaintiff's First Motion to Amend as a different complaint in a new civil action, No. 5:14-cv-109 (WLS). On Plaintiff's motion, however, the two separate actions are now consolidated.

While at Dooly State Prison, Plaintiff alleges that he and another Hebrew Israelite prisoner asked Defendant Brockway for a "service day for worship," but that Defendant Brockway "advised [Plaintiff] that [he] would not be allowed an Israelite Sabbath Service." (Doc. 7, p. 5). Plaintiff also alleges that he wrote to Defendant Chaney and "ask[ed] to speak with her about the Hebrew Israelite Sabbath Service," but that Defendant Chaney "never called [Plaintiff] to her office or spoke to [Plaintiff] about a Sabbath service." (*Id.*). Apart from these scant allegations, both of which Plaintiff raised in his First Motion to Amend, Plaintiff has not provided additional fact-based allegations which this Court need accept as true. *See, e.g.*, (Doc. 80, p. 11) ("The Defendants further prevented the Plaintiff from enjoying the free exercise of his Religion by prohibiting worship services, prayer meetings and the wearing of Religious items and symbols"). *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the tenet that a Court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

## AVAILABLE RELIEF

Plaintiff sues the Defendants pursuant to two separate causes of action: one provided by RLUIPA[5] based on the Defendants' alleged violation of RLUIPA's substantive provisions,[6] and the other provided by Section 1983 based on the Defendants' alleged violation of Plaintiff's free-exercise rights under the First Amendment. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1253 (11th Cir. 2012).

In terms of relief, Plaintiff seeks: a declaration that his rights were violated; compensatory and punitive damages; reimbursement for his confiscated kosher foods and anointing oil; and an injunction allowing Plaintiff to observe Passover and to participate in a Shabbat worship service. (Doc. 1, pp. 9, 11; Doc. 7, pp. 7–8; Doc. 78, p. 8; Doc. 80, p. 9).

As discussed below, Plaintiff cannot obtain any of the monetary relief he requests under RLUIPA. Nor may Plaintiff—who, since filing this lawsuit, has been transferred to Johnson State Prison—obtain the requested injunctive or declaratory relief under either RLUIPA or Section 1983. Finally, Plaintiff may not sue the Defendants, in their official capacities, for monetary damages under Section 1983. Therefore, in the instant action at least, the only form of relief potentially available to Plaintiff is monetary damages obtained from the Defendants, in their individual capacities, under Section 1983

### Monetary Damages under "RLUIPA"

Binding Supreme Court and Eleventh Circuit case law prevents Plaintiff from obtaining monetary damages under RLUIPA. In *Sossamon v. Texas*, 131 S.Ct. 1651, 1663 (2001), the Supreme Court "conclude[d] that States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA." Because a suit

---

[5] 42 U.S.C. § 2000cc–2(a)
[6] 42 U.S.C. § 2000cc–1(a)

against state officials, in their official capacities, is in fact a suit against the State itself, *see, e.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–02 (1984), Plaintiff may not sue the Defendants, in their official capacities, for monetary damages under RLUIPA.

Nor may Plaintiff sue the Defendants, in their individual capacities, for monetary damages under RLUIPA. Binding Eleventh Circuit case law holds that RLUIPA "cannot be construed as creating a private action against individual defendants for monetary damages." *Smith v. Allen*, 502 F.3d 1255, 1275 (11th Cir. 2007) (abrogated on other grounds). *Accord Aziyz v. Tremble*, 2008 WL 282738 at *4 (M.D. Ga. 2008) ("In light of the conclusion of the Eleventh Circuit in *Smith v. Allen*, therefore, the Court finds that no claims for money damages brought pursuant to RLUIPA can be maintained against Defendants in their individual capacities. This Court need not decide, therefore, whether the Magistrate Judge was correct in concluding that Plaintiff's rights under RLUIPA were violated"). In light of these binding legal authorities, therefore, the only remedies possibly available to Plaintiff under RLUIPA are declaratory and injunctive relief.

### Declaratory and Injunctive Relief under both "RLUIPA" and "Section 1983"

The injunctive and declaratory relief analysis is the same for both Plaintiff's RLUIPA and his Section 1983 causes of action. In both cases, "[t]he general rule in [this] circuit is that a transfer . . . from prison will moot that prisoner's claims for injunctive and declaratory relief." *Smith*, 502 F.3d at 1267 (citing *Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985)).

In this case, it is clear that Plaintiff's requests for injunctive and declaratory relief with regard to his ability to observe Passover are moot. Although Plaintiff alleges that he was unable to observe Passover in 2013 while at Dooly State Prison, the record indicates that Plaintiff was able to observe Passover at Dooly State Prison in 2014. Furthermore, Plaintiff is now housed at

an entirely different prison, Johnson State Prison, and Plaintiff has not provided any fact-based allegations suggesting that officials at Johnson State Prison will hinder his ability to observe Passover in 2015. Because injunctive relief is "a prospective remedy, intended to prevent future injuries," *Smith* 502 F.3d at 1267, and because there is no indication in the record that Plaintiff will suffer any future harm with regard to his ability to observe Passover, there is no basis for this Court to grant Plaintiff's requests for injunctive and declaratory relief.

It is also recommended that the Court find that Plaintiff's request for injunctive and declaratory relief with regard to his worship service claim is moot. As indicated above, Plaintiff's worship service allegations relate only to the conduct of two Defendants, Defendants Brockway and Chaney, at Dooley State Prison. Moreover, since his transfer, Plaintiff has not diligently pursued his worship-service claim by supplementing the record with non-conclusory allegations relating to Johnson State Prison. *Cf.* (Doc. 80, pp. 7–8). Even if Plaintiff had supplemented the record following his transfer, though, it is not at all clear that any of the Defendants named in this action have a sufficient "connection" with Johnson State Prison such that the *Ex parte Young* exception to sovereign immunity applies. *See, e.g.*, *Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988) ("the state officer sued must, by virtue of his office, have some connection with the unconstitutional act or conduct complained of") (internal punctuation omitted). To summarize, then, insofar as Plaintiff seeks injunctive and declaratory relief based on the lack of a Hebrew Israelite worship service at Dooly State Prison, Plaintiff's claims are clearly moot. Additionally, insofar as Plaintiff seeks prospective relief based on possible continuing harms at Johnson State Prison—that is, for possible continuing worship service denials— Plaintiff's claims should be raised in a separate action in which Plaintiff can name the appropriate defendants and can supplement the record with supporting fact-based allegations.

Monetary Damages under "Section 1983"

State officers acting in their official capacities are not "persons" under Section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Therefore, Plaintiff may not recover monetary damages from the Defendants, in their official capacities, under Section 1983.

Plaintiff may seek damages from the Defendants, in their individual capacities, under Section 1983. As the Defendants note, however, the Prison Litigation Reform Act ("PLRA") limits the type of monetary relief available to Plaintiff. (Doc. 67-1, p. 13). Specifically, Plaintiff may only potentially recover nominal damages[7] based on his allegations of "Religious persecution [and] mental and emotional distress," (Doc. 1, p. 9; Doc. 7, p. 7), because (i) the PLRA requires a prior showing of physical injury, *see* 42 U.S.C. § 1997e(e); and because (ii) the record does not contain sufficient fact-based allegations suggesting that Plaintiff suffered from a "more than *de minimis*" injury. *See, e.g.*, *Williams v. Allen*, No. 7:13-cv-86 (HL), 2014 WL 2547804 at *1 (M.D.Ga June 5, 2014) (concluding that allegations of hunger and weight loss similar to those alleged by Plaintiff were *de minimis*).

With regard to Plaintiff's request for reimbursement for his confiscated kosher foods and anointing oil, the PLRA does not appear to limit Plaintiff's recovery to mere nominal damages. *See, e.g.*, *Centaur v. Werner*, 2005 WL 1345624 at *3 (M.D. Fla. June 6, 2005) (citing *Thompson v. Carter*, 284 F.3d 411, 418 (2d. Cir. 2002)) ("Section 1997e(e) does not bar an award for the alleged loss of Plaintiff's property"). That said, Plaintiff's requests for reimbursement are, in essence, claims for a post-deprivation remedy for the loss of property, and they are therefore barred by the "*Parratt-Hudson* doctrine." *See, e.g.*, *Ward v. Mays*, No. 5:14-cv-291 (MTT), 2014 WL 5091887 (M.D. Ga. Oct. 9, 2014) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), and discussing Georgia's post-deprivation remedies).

---

[7] *See Al-Amin v. Smith*, 637 F.3d 1192 (11th Cir. 2011).

## DISCUSSION[8]

Because nominal damages are potentially available to Plaintiff, should he prevail on his claims against the Defendants in their individual capacities, the Court must assess the merits of Plaintiff's Free-Exercise claims filed under Section 1983. As the Defendants note, (Doc. 67-1, p. 7), the Supreme Court's decision in *Turner v. Safley*, 482 U.S. 78 (1987), provides the relevant standard. *Turner* directs courts to employ a deferential "reasonableness" test in order to determine whether prison regulations which allegedly impinge upon inmates' constitutional rights are (1) "reasonably related to legitimate penological interests." 482 U.S. at 89. *Turner* also directs courts to determine: (2) "whether alternative means are open to inmates to exercise the asserted right;" (3) "what impact an accommodation of the right would have on guards and inmates and prison resources;" and (4) "whether there are ready alternatives to the regulation." *Overton v. Bazzetta,* 539 U.S. 126, 136 (2003).

Although some courts have dismissed worship service and religious holiday claims similar to those Plaintiff now brings in light of *Turner*'s deferential standard,[9] the Defendants have not provided sufficient information for a proper *Turner* analysis. For example, with regard to Plaintiff's worship service claims, the Defendants cite *Johnson v. Baker*, 1995 WL 570913 at *5 (6th Cir. 1995) (noting that there was no showing that a Nation of Islam adherent could not meaningfully participate in a mainstream Islamic worship service, despite two "categorical" differences in belief and practice), and *Bryant v. Gomez*, 46 F.3d 948, 949–50 (9th Cir. 1995) (noting, on appeal following summary judgment, the lack of evidence to show that a Pentecostal

---

[8] This Recommendation will not separately assess the Defendants' Rule 12(b)(6) and qualified immunity arguments, which are "intertwined." *See, e.g.*, *Wooten v. Campbell*, 49 F.3d 696, 699 (11th Cir. 1995).

[9] *See, e.g.*, *Shabazz v. O'Lone*, 595 F.Supp. 928 (D.N.J. 1984) (dismissing a Muslim inmate's challenge to policies effectively preventing him from participating in Jumu'ah services); *accord O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987) ("we think the findings of the District Court establish clearly that prison officials have acted in a reasonable manner").

10

adherent could not accomplish the mandates of his religion through "the means that the defendants . . . provide[d] in his prison"), but they neither explain what worship services were available to Plaintiff at Dooly State Prison, nor argue that those available services were reasonably adequate. To put it another way, the Defendants do not, for example, assert that mainstream Jewish, or even generic, non-denominational, worship services were available at Dooley State Prison, and argue that these services "reasonably" accommodated Plaintiff's requests for a Hebrew Israelite worship service. *See, e.g.*, *Boxer X v. Donald*, 169 F. App'x 555, 560 (11th Cir. 2006) (discussing, on appeal following summary judgment, the use "[i]n this case" by the Georgia Department of Corrections of "congregational services based on generic abstractions of actual denominational faiths"). Instead, the Defendants merely assert that Plaintiff "does not allege he is unable to attend religious services." (Doc. 67-1, p. 8). Because Plaintiff has alleged that he requested, but was denied, a Hebrew Israelite worship service, (Doc. 7, p. 5), and because the First Amendment guarantees Plaintiff "a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners," *Cruz v. Beto*, 405 U.S. 319, 322 (1972), Defendants' arguments, which merely ask the Court to leave this issue to the sound discretion of Dooly State Prison and Georgia Department of Corrections officials, do not provide an adequate basis for the dismissal of Plaintiff's worship-service claim.

The Defendants' arguments for dismissal are similarly deficient with regard to Plaintiff's Passover observance claims. Although the Defendants assert that "Plaintiff . . . alleges only that he was unable to purchase Passover items at a vendor of his choosing," (Doc. 67-1, p. 8), Plaintiff's filings indicate that this case involves more than a simple matter of vendor preference. To summarize, Plaintiff alleges that: (i) Defendants Berry, Brockway, and Gramiak knew, by at least the middle of February 2013, that Plaintiff wished to celebrate Passover and that he

required kosher foods to do so, (Doc. 1, pp. 6–7; Doc. 21, p. 17); (ii) he alerted Dooly State Prison authorities, through a grievance dated February 22, 2013, that "Aleph Institute [is] used by Caucasian Jews [and] will not donate [or sell] to [Plaintiff] because of differences in belief," (Doc. 21, pp. 15, 19); (iii) Defendants Mortimer and Nelson responded to Plaintiff's grievance by questioning Plaintiff's beliefs, determining that he "wasn't Jewish," (Doc. 1, p. 8; Doc. 34, p. 1); (iv) Defendants Mortimer, Chaney, and Gramiak informed Plaintiff that he would not be allowed to observe Passover 2013 due to his secured housing assignment,[10] (Doc. 1, pp. 7–8; Doc. 21, p. 11); and (v) Defendants Horn, Chaney, Gramiak and Brockway instructed Plaintiff to order from The Aleph Institute despite their knowledge of Plaintiff's claim that The Aleph Institute refused to provide kosher foods to Plaintiff. (Doc. 21, pp. 2, 10, 16–19; Doc. 80-4, p. 2). Plaintiff also alleges, in more recent filings to which the Defendants did not respond, that his family ordered kosher foods from a different vendor, Gleiberman's, on Plaintiff's behalf, but that these foods were confiscated upon arrival at Dooly State Prison. (Doc. 80, p. 21; Doc. 80-7, p. 1).

With regard to Defendants Gramiak, Berry, Chaney, Brockway, Horn, and Mortimer, Plaintiff's allegations are sufficiently specific to state a claim for relief based on a potential violation of Plaintiff's right to free exercise of his Hebrew Israelite religion. *Cf.* (Doc. 67-1, p. 9). With regard to Defendant Nelson, however, the Defendants correctly note that Plaintiff's allegations are insufficient. (Doc. 67-1, p. 9). Plaintiff's only allegation against Defendant Nelson—that Defendant Nelson questioned Plaintiff about his religious beliefs—does not assert a violation of clearly-established federal law. *See, e.g.*, *Cutter v. Wilkinson*, 544 U.S. 709, 725 n.13 (2005) (prison officials may appropriately question whether a prisoner's religiosity, asserted

---

[10]The record indicates that Plaintiff was transferred to segregated quarters—the "J-1 Security Unit"—on February 11, 2013, based on his wrongful possession of a cell phone. (Doc. 21, p. 20; Doc. 34, p. 1).

as the basis for a requested accommodation, is authentic"); *accord Benning v. Georgia*, 391 F.3d 1299, 1313 (11th Cir. 2004) ("the first amendment already requires Georgia to determine whether the asserted belief of an inmate making a Free Exercise claim is religious and sincerely held"). Additionally, Plaintiff's own allegations suggest that Plaintiff may have caused some confusion about the precise nature of his religious beliefs: Plaintiff's Complaint reads, in relevant part, "Defendant Cynthia Nelson . . . asked me when did I convert to being Jewish and I explained to Defendant Nelson that I was raised Jewish and desired to observe my Holydays of Passover." (Doc. 1, pp. 7–8). Given these allegations, and given the state of the law regarding the questioning of prisoners' religious beliefs, it is **RECOMMENDED** that Plaintiff's claims against Defendant Nelson be **DISMISSED**, and that Defendant Nelson be **DISMISSED** as a party to this action.

Finally, with regard to Plaintiff's Passover 2014 claim, the record at present indicates that Defendant Gramiak "approved" Plaintiff's request to order anointing oil, (Doc. 12, p. 1; Doc. 78, p. 4); that Plaintiff's family ordered Passover items, including anointing oil, on Plaintiff's behalf, (*id.*); that "[due] to vendor error," (Doc. 12, p. 1), Plaintiff's anointing oil arrived at DSP marked with Plaintiff's name but also with "ATTN: Chaplain Michael Sapp," (Doc. 50-1, p. 1); that Chaplain Sapp "had stated to the plaintiff that it would be ok to address all Passover items to his [a]ttention," (Doc. 25, pp. 2, 11); that upon the arrival of Plaintiff's anointing oil at DSP, Chaplain Sapp nevertheless filed a disciplinary report against Plaintiff based on Plaintiff's unauthorized use of Sapp's name, (Doc. 50-2, p. 1; Doc. 78, p. 5); and that Defendant Chaney, (Doc. 25, p. 4), Chaplain Sapp, (Doc. 13-1, p. 3, ¶ 9; Doc. 78, p. 6), or perhaps the "the business office," (Doc. 50, p. 3; Doc. 50-Doc. 78, p. 5), confiscated Plaintiff's anointing oil.

As Plaintiff notes, the Defendants have not "offered the [DSP] mailing policy as evidence to show the appropriate [m]echanisms." (Doc. 25, p. 2). Additionally, there is a dispute of fact—which, at this stage, the Court must resolve in Plaintiff's favor—regarding whether Plaintiff was adequately informed of the DSP religious mailing procedure. *Cf.* (Doc. 13-1, p. 3, ¶¶ 5, 6) *with* (Doc. 25, p. 3) ("Defendant Chaney [misled] the Court when she stated that instruction was given to the Plaintiff on the [m]ethod for which Passover items were to be delivered"). Given the lack of information currently available to the Court, and given the Defendants' failure to provide on-point argument, it is recommended that Plaintiff be allowed to proceed with his Passover 2014 claim.

## SUMMARY AND CONCLUSION

To summarize, it is **RECOMMENDED** that Plaintiff's Fifth Motion to Amend (Doc. 73), in which Plaintiff sought to amend his Complaint to accurately reflect his litigation history, be **GRANTED**. It is also **RECOMMENDED** that Plaintiff's Sixth Motion to Amend (Doc. 78), in which Plaintiff sought to add two new Defendants, be **GRANTED IN PART** with respect to Chaplain Michael Sapp, but **DENIED IN PART** with respect to "Officer Robinson."

Finally, it is **RECOMMENDED** that the Defendants' Joint Motion to Dismiss (Doc. 67) be **GRANTED**, as to Plaintiff's claims for relief under RLUIPA, for injunctive relief under Section 1983, and for monetary damages against the Defendants, in their official capacities, under Section 1983; and **DENIED** as to Section 1983 claims for nominal damages against the Defendants, in their individual capacities, with regard to alleged denial of Sabbath services and Passover services in 2013 and 2014.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation with the District Judge to whom this case is assigned <u>WITHIN FOURTEEN (14) DAYS</u> after being served with a copy thereof.

**SO RECOMMENDED**, this 19th day of December, 2014.

<u>s/ Charles H. Weigle</u>
Charles H. Weigle
United States Magistrate Judge
